## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NADORIAN HUDSON,

      Plaintiff,

v.                              Case No: 8:25-cv-1234-KKM-TGW

DATA MORTGAGE, INC. d/b/a
ESSEX MORTGAGE,

      Defendant.

_____

## <u>ORDER</u>

On May 13, 2025, Essex Mortgage removed this action, which includes claims under the Truth in Lending Act (TILA) and Real Estate Settlement Procedures Act (RESPA). (Doc. 1). The next day, NaDorian Hudson moved to remand. Mot. to Remand (MTR) (Doc. 4). On May 15, 2025, Essex moved to dismiss Hudson's complaint. Mot. to Dismiss (MTD) (Doc. 8). For the below reasons, I deny Hudson's motion and grant Essex's.

## I.   BACKGROUND

In May 2023, Hudson took out a mortgage on property located at 33355 Whisper Pointe Drive, Wesley Chapel, Florida (the Property). Am. Compl. (Doc. 1-1) ¶¶ 5–6. Although GenHome Mortgage Corporation was the original mortgagor, the mortgage is now serviced by Essex. *Id.* ¶ 5. Hudson did not

receive any loan funds directly into his account and, at closing, Essex failed to provide, as required by law, the Notice of Right to Cancel. *Id.* ¶¶ 7–8. Hudson alleges that, in February 2025, he exercised his right to rescission under TILA by sending Essex written notice. *Id.* ¶ 9.

After receiving the rescission notice, Essex failed to release the lien, failed to return any payments made within twenty calendar days made of receipt of the notice, and continued collection activities. *Id.* ¶¶ 10–11. Essex also failed to validate the alleged debt, to record any valid assignment of the mortgage in Pasco County, and to produce the original wet-ink promissory notice or otherwise demonstrate entitlement to enforce the instrument. *Id.* ¶¶ 12–13. Finally, Hudson alleges that Essex has not proven that the transaction qualifies as a Residential Mortgage Transaction exempt from rescission. *Id.* ¶ 15.

As a result, Hudson sued Essex in the Circuit Court of the Sixth Judicial Circuit, in and for Pasco County, on April 9, 2025. *See* State Ct. Docket Sheet (Doc. 1-2). Hudson then amended his complaint on April 14, 2025. Am. Compl. Hudson seeks enforcement of the rescission under TILA and statutory damages and declaratory relief under RESPA. *See id.* ¶¶ 17–19, 22–24 (Counts I and II). Among other relief, Hudson also seeks a declaration that: (1) Essex lacks standing to enforce the alleged debt; (2) his rescission was valid and effective; (3) the mortgage is void due to Essex's failure to comply with TILA

rescission procedures; and (4) Hudson retains full and clear ownership of the Property without further obligation to Essex. *See id.* ¶¶ 25–37 (Counts III, IV, V, and Prayer for Relief).

Hudson served Essex with his amended complaint on April 16, 2025, and Essex removed on May 13, 2025. Notice of Removal (Doc. 1) at 1–2. Essex argues that removal jurisdiction exists because Hudson's TILA and RESPA claims arise under federal law and that supplemental jurisdiction exists over Hudson's state-law claims because they "derive from the same common nucleus of operative fact" as the federal claims. *Id.* at 4–6; *see* 28 U.S.C. §§ 1331, 1367, 1441(a).

The next day, Hudson moved to remand. MTR. Believing the case to properly be in federal court, Essex Mortgage moved to dismiss. MTD. Each side responds in opposition. Resp. to MTR (Doc. 10); Resp. to MTD (Doc. 12).[1] Without seeking leave to do so, Hudson filed a reply in support of his motion to remand (Doc. 13), four notices of supplemental evidence (Docs. 14, 15, 16, 17), and a "notice of payment under protest" (Doc. 18).

---

[1] Hudson also responded to my order asking Hudson to "explain why the complaint should not be dismissed as a shotgun pleading." (Doc. 5); *see* (Doc. 11). I will discuss Hudson's response when addressing Essex's motion to dismiss.

## II.  LEGAL STANDARDS

### A. Removal

Except as otherwise provided by federal statute, a defendant may remove any civil action in which a federal district court would have had original jurisdiction. 28 U.S.C. § 1441(a). A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331. A federal district court also has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* § 1367(a). A defendant must file a notice of removal "in the district court of the United States for the district and division within which such action is pending," no later than thirty days after receiving "a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id.* § 1446(a), (b)(1).

### B. Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, courts accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544.

## III.  ANALYSIS

I start with Hudson's motion to remand. Concluding that the case is properly in federal court, I then address, and grant, Essex's motion to dismiss.

5

## A. Hudson's Motion to Remand is Denied

Hudson argues that Essex's removal "constitutes gamesmanship and causes significant prejudice to [Hudson]," as litigation was ongoing in state court. MTR ¶ 6. Hudson also argues that the "federal claims are not predominant" and that remand is "appropriate where removal results in prejudice or undermines judicial economy." *Id.* ¶¶ 8–9. Essex responds that it timely and properly removed the action to federal court and that this Court has federal question and supplemental jurisdiction. Resp. to MTR at 4–6.

I deny Hudson's motion. First, Essex complied with § 1446's procedural requirements. Hudson served Essex with a copy of the complaint on April 16, 2025, and Essex filed its notice of removal on May 13, 2025. *See* Notice of Removal at 2. Hudson's state court action was pending "in the Circuit Court of the Sixth Judicial Circuit, in and for Pasco County," and Pasco County is "located within the Tampa Division" of the Middle District of Florida. *See id.* at 6–7; Am. Compl. Accordingly, Essex filed its notice of removal in "the district court of the United States for the district and division within which such action is pending" within "30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(a), (b)(1).

Second, a federal district court has original jurisdiction over Hudson's action. *See id.* § 1441(a). Hudson's TILA and RESPA claims "aris[e] under"

federal law. 28 U.S.C. § 1331; *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378–79 (2012) ("[D]istrict courts possess federal-question jurisdiction under § 1331" when "federal law creates a private right of action and furnishes the substantive rules of decision."). And supplemental jurisdiction exists over Hudson's state law claims because they "arise out of a common nucleus of operative fact with a substantial federal claim." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006); *see* 28 U.S.C. § 1367(a).

Because Essex's notice of removal is procedurally compliant and Hudson could have originally brought this action in federal court, Essex has carried its burden to establish removal jurisdiction. *See Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal."). Although a district court retains discretion to remand a case after dismissing the federal claims, *see Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), Hudson presents no authority to support the request to remand this action in its entirety, *see In re City of Mobile*, 75 F.3d 605, 607 (11th Cir. 1996) ("Section 1367(c) cannot be fairly read as bestowing on district courts the discretion to remand to a state court a case that includes a properly removed federal claim."). And although a defendant may sometimes waive its right to remove a case by "litigating on the merits" in state court, *see Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (per

7

curiam), Essex's only action in state court was to move for an extension of time to respond to Hudson's complaint, *see* State Ct. Docket Sheet at 1; (Doc. 1-3) at 75–77. This sole motion does not present a basis for waiver. *See* 14C CHARLES ALAN WRIGHT, ET AL. FEDERAL PRACTICE AND PROCEDURE § 3721 (rev. 4th ed. May 2025 update) ("[Federal courts] have refused to find a waiver . . . when the defendant's participation in the state action was not substantial or was dictated by the rules of that court or a state-court judge."); *cf. Yusefzadeh*, 365 F.3d at 1246 ("[T]he filing of a motion to dismiss in and of itself does not necessarily constitute a waiver of the defendant's right to proceed in the federal forum." (quotation omitted)).

For these reasons, I deny Hudson's motion to remand.

### B. Essex's Motion to Dismiss is Granted

Essex makes five arguments: (1) Hudson's mortgage does not qualify for rescission under TILA; (2) Hudson has failed to state a claim under RESPA; (3) Hudson cannot plead a cause of action for a lack of standing; (4) Hudson has failed to state a claim for declaratory judgment under Florida law; and (5) Hudson's complaint is a shotgun pleading. MTD at 5. Because I agree with Essex that Hudson's mortgage does not qualify for rescission under TILA, Hudson has failed to state a claim under RESPA, and the complaint is a shotgun pleading, I grant Essex's motion to dismiss.

### 1. Hudson Lacks a Right to Rescission Under TILA

In Counts I, IV, and V, Hudson seeks duplicative relief related to his attempted rescission. Hudson alleges that he "timely rescinded the mortgage transaction under TILA." Am. Compl. ¶ 18. He further alleges that Essex "failed to provide the required Notice of Right to Cancel at closing," thus extending Hudson's "right to rescind . . . to three years." *Id.* ¶¶ 31–32. In Count I, he "seeks enforcement of rescission, voiding of the mortgage lien, and full return of all funds paid." *Id.* ¶ 20. In Count IV, he "seeks declaratory judgment confirming rescission was valid and effective." *Id.* ¶ 34. In Count V, Hudson seeks a declaratory judgment that "[t]he mortgage is void due to [Essex's] failure to comply with TILA rescission" and that he "retains full and clear ownership of the [P]roperty without further obligation to [Essex]. *Id.* ¶ 37.

Essex moves to dismiss Counts I, IV, and V on the basis that the mortgage was part of a residential mortgage transaction, which is exempted from TILA's right to rescission. MTD at 5–7, 11. As to Count I, Hudson argues that there is a lack of "sufficient information to determine[] whether the loan at issue qualifies as a 'residential mortgage transaction.' " Resp. to MTD at 2. In defense of Count IV, Hudson argues that "failure to provide the right-to-cancel notice is itself a predicate violation that supports the extension of rescission rights and independently entitles [Hudson] to relief." *Id.* at 7. Hudson provides no legal authority that circumvents the exemption for residential mortgage transactions and supports his position concerning Count

IV. Hudson does not respond to Essex's residential mortgage transaction exemption argument regarding Count V. *See id.* at 7–8. Essex is correct that the mortgage transaction is exempted from the right to rescission. Because amendment would be futile, I dismiss Counts I, IV, and V with prejudice.

Under TILA, "private litigants with loans secured by real property used as a principal dwelling may seek the [remedy] of rescission." *Christ v. Beneficial Corp.*, 547 F.3d 1292, 1297 (11th Cir. 2008); *see* 15 U.S.C. § 1635(a); 12 C.F.R. § 1026.23(a)–(b). When an obligor exercises this right, "he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C. § 1635(b). Exempted from this right to rescission, though, is "a residential mortgage transaction." *Id.* § 1635(e)(1); 12 C.F.R. § 1026.23(f)(1). A "residential mortgage transaction" is "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x). And a "dwelling" is defined as "a residential structure or mobile home which contains one to four family housing units, or individual units of condominiums or cooperatives." *Id.* § 1602(w).

10

A plaintiff fails to state a claim for rescission if the "complaint and the documents it incorporates" reveal that the loan at issue constitutes a residential mortgage transaction. *Cooper v. Countrywide Home Loans*, 724 F. App'x 741, 743 (11th Cir. 2018) (per curiam); *see, e.g.*, *Marquis v. Deutsche Bank Nat'l Tr. Co. For Long Beach Mortg. Loan Tr. 2006-WL3*, 710 F. App'x 437, 438 (11th Cir. 2018) (per curiam); *Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 921 (11th Cir. 2012) (per curiam).

The mortgage that Hudson seeks to rescind is part of a residential mortgage transaction. While Hudson did not attach the mortgage to his complaint, Essex attached it to the motion to dismiss. MTD Ex. 1. (Doc. 8-1). Where "the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal" without converting "the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam); *see also La Grasta*, 358 F.3d at 845. The mortgage is central to Hudson's suit, which seeks to enforce obligations and rights of the parties stemming from the mortgage transaction—such as his attempted rescission. *See Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 693–94 (11th Cir. 2015) (per curiam). Indeed, Hudson's complaint repeatedly references the mortgage. *See, e.g.*, Am. Compl. ¶¶ 5, 10, 13, 15, 18. According to the complaint, at issue

is "a mortgage transaction . . . concerning the [Property]." *Id.* ¶ 5. Further, Hudson "is the rightful owner of the [Property] as evidenced by a recorded warranty deed." *Id.* ¶ 6.

A review of the mortgage and warranty deed reveal that Hudson took out the mortgage on his residence to acquire or construct it. In the mortgage, which is dated May 16, 2023, Hudson covenanted to "occupy, establish, and use the Property as [Hudson's] principal residence within 60 days after the execution of this Security Instrument." MTD Ex. 1 at 5. The mortgage incorporates a "Planned Unit Development Rider," which covers the Property and relieves Hudson of certain insurance requirements under the mortgage if "the Owners Association[,] . . . acting as trustee for the *homeowners*," maintains a satisfactory insurance policy. *Id.* at 12 (emphasis added). The warranty deed, which Hudson filed as an exhibit to his original complaint,[2] and which is referenced in the complaint and is central to his claims, conveyed the Property to Hudson and his wife on May 15, 2023. *See* State Ct. Docket Sheet; (Doc. 1-3) at 64–66. Hudson's "complaint and the documents it incorporates" expose the loan as constituting a residential mortgage transaction. *See Cooper*, 724 F.

---

[2] Even though Hudson did not attach any exhibits to his amended complaint, I consider the attachments to the original complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it."); *Gross v. White*, 340 F. App'x 527, 535 (11th Cir. 2009) (per curiam) ("A district court ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original complaint.").

App'x at 743 (holding that a warranty deed transferring the property to the plaintiff and a security instrument used to secure the purchase, which identifies the property as the plaintiff's residence, were sufficient to conclude that the loan was a residential mortgage transaction). Because the transaction that Hudson seeks to rescind is a residential mortgage transaction, he fails to state a claim for rescission in Count I.

Counts IV and V fail for the same reason. Hudson does not identify a basis for the declaratory judgment he seeks in Count IV and brings his declaratory judgment claim in Count V under Florida's Declaratory Judgment Act, which is "a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights." *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 881 (11th Cir. 2016) (per curiam). Thus, I must apply the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and construe Counts IV and V as attempting to make claims under it.[3] *See McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004) ("[F]ederal law governs procedural issues."); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138 n.3 (11th Cir. 2005) ("There is little doubt . . . that the district court had to apply the [federal] Declaratory Judgment Act . . . rather than the state declaratory judgment act, in this action."); *Coccaro*, 648 F. App'x at 881

---

[3] For this reason, I disregard Essex's arguments regarding Hudson's failure to state a claim under Florida's Declaratory Judgment Act. *See* MTD at 10–11.

(affirming a district court which construed a claim under the Florida Declaratory Judgment Act as a claim under the federal Declaratory Judgment Act).

The transaction that Hudson sought to rescind in Count I, and now seeks in Count IV to have the Court declare validly rescinded, is a residential mortgage transaction. Thus, Hudson has no right to rescind and cannot be entitled to declaratory judgment in Count IV. Hudson's request in Count V that the Court declare that (1) the mortgage is void because of Essex's failure to comply with Hudson's rescission under TILA, and (2) Hudson retains full and clear ownership of the Property without further obligation to Essex also fails. There can be no basis to provide such a declaratory judgment for Hudson when he has no right to rescind the mortgage.

A *pro se* plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice," unless amendment would be futile. *See McCree v. Griffin*, No. 19-14646-A, 2020 WL 2632329, at *1 (11th Cir. May 20, 2020) (per curiam) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam)). No amendment could remove the transaction from the exemption for residential mortgage transactions. Amending Counts I, IV, and V would be futile; I dismiss them with prejudice.

### 2.  Hudson Fails to State a Claim Under RESPA

Hudson alleges that Essex "failed to validate the alleged debt as required under 12 U.S.C. § 2605(e) of RESPA . . . including failure to supply a complete life of loan history, proof of loan disbursement, and a valid chain of title." Am. Compl. ¶ 12. Because of Essex's "[failure] to validate the alleged debt," he seeks "statutory damages and declaratory relief under RESPA" in Count II. *Id.* ¶¶ 23–24. Hudson also incorporates his earlier conclusory claim for "actual damages." *See id.* ¶¶ 16, 22. For the reasons explained below, these allegations are insufficient to state a claim under RESPA. I dismiss Count II without prejudice.

Essex argues that Hudson fails to state a claim because RESPA "contains absolutely no provision requiring [Essex] to validate a debt," much less provide loan history, proof of disbursement, and valid chain of title. MTD at 8. According to Essex, even if Hudson's various letters to Essex were construed as Qualified Written Requests under 12 U.S.C. § 2605(e), Essex complied with its obligations, as shown by the communications Hudson attached to his original complaint. *Id.*  Further, Essex asserts, Hudson's claim is insufficient because he does not plead that he has suffered actual or statutory damages from Essex's failure to validate the debt. *Id.* at 9. Finally, Essex contends that Hudson does not plead that Essex has a pattern or practice

of noncompliance with the requirements of 12 U.S.C. § 2605(e), which he must to receive statutory damages. *Id.*

In response, Hudson proclaims that Count II is a claim under both RESPA and the Florida Consumer Collection Practices Act (FCCPA). Resp. to MTD at 4–5. He also argues that Essex "failed to respond meaningfully to [Qualified Written Requests]" and that he suffered concrete harms as a result. *Id.* Hudson lists the harms in a conclusory manner: "Prolonged wrongful collection efforts[.] Damage to credit[.] Emotional distress and anxiety[.]" *Id.* at 4.

RESPA imposes a duty on loan servicers to respond to borrower inquiries.[4] 12 U.S.C. § 2605(e); *see* 12 C.F.R. § 1024.36(a). When a "servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). A qualified written request is "a written correspondence" that "includes, or otherwise enables the servicer to identify" the borrower's name and account.

---

[4] The duty to respond is limited. *See* 12 C.F.R. § 1024.36(f); *Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 981 (11th Cir. 2017) (per curiam) (recognizing that 12 C.F.R. § 1024.36(f) enumerates "situations in which a servicer is not required to provide the information requested").

16

*Id.* § 2605(e)(1)(B)(i). Further, a qualified written request must include "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B)(ii).

After receiving a qualified written request, a servicer has thirty business days to "make appropriate corrections in the account of the borrower" and notify the borrower of such corrections in writing. *Id.* § 2605(e)(2). Alternatively, the servicer has thirty business days to investigate and provide the borrower with a written explanation of why the servicer believes the borrower's account is correct or provide the borrower with the information sought or explain why the information is unavailable. *Id.* § 2605(e)(2)(B)(i)–(C)(i). Regardless of the response, the servicer must provide contact information for individuals or offices that can assist the borrower. *See id.* § 2605(e)(2)(A)–(C).

A servicer who "fails to comply with any provision" of RESPA shall be liable to individual borrowers for "any actual damages to the borrower as a result of the failure" and "additional damages," "not to exceed $2,000," when there is "a pattern or practice of noncompliance with the requirements" of RESPA. *Id.* § 2605(f)(1).

"[T]o prevail on a RESPA claim, a plaintiff must show (1) a failure to comply with a RESPA obligation and (2) actual damages sustained as a result

17

of the failure to comply." *Baez*, 709 F. App'x at 982 (citing *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016)). "[D]amages are an essential element in pleading a RESPA claim." *Renfroe*, 822 F.3d at 1246. "For actual damages to be 'a result of' a servicer's noncompliance, the 'plaintiff must present evidence to establish a causal link between the [servicer's] noncompliance and [her] damages.'" *Baez*, 709 F. App'x at 982 (alteration in original) (quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1027–28 (11th Cir. 2001) (en banc) (interpreting TILA, which similarly allows for recovery of damages sustained for noncompliance)). A plaintiff fails to state a RESPA claim when he does not allege facts supporting either actual damage caused by the failure to comply or a pattern or practice of such violations by the defendant that warrant statutory damages. *See, e.g.*, *Renfroe*, 822 F.3d at 1246–48; *Thomas v. US Bank Nat'l Ass'n*, 675 F. App'x 892, 899–900 (11th Cir. 2017) (per curiam); *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010) (per curiam).

Hudson's amended complaint does not sufficiently allege that he suffered damages caused by Essex's failure to comply with its obligations under RESPA. In Count II, Hudson realleges that he "suffered actual damages, including but not limited to financial losses totaling approximately $159,436 in payments, emotional distress, time spent pursuing legal remedies, and related harms." Am. Compl. ¶¶ 16, 22. He also "seeks statutory damages and declaratory relief

under RESPA." *Id.* ¶ 24. Missing from the allegations is any "causal link between [Essex's] noncompliance and [Hudson's] damages." *See Baez*, 709 F. App'x at 982 (internal quotation omitted). Hudson merely alleges that he was damaged, and that Essex failed to "validate the alleged debt" by not producing the information he requested. Am. Compl. ¶¶ 16, 22–23. Further, there are no allegations of a pattern or practice of RESPA violations, much less facts that support statutory damages.

Hudson's arguments in response to the motion to dismiss are unpersuasive. They are, in effect, attempts to amend the complaint rather than contend that the complaint sufficiently alleges a RESPA claim. In his response, Hudson expands Count II, adding the FCCPA as a basis, and lists new allegations of "concrete harm[s]." Resp. to MTD at 4–5. Hudson may not raise new claims or allegations in a response to a motion to dismiss. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and exhibits attached thereto."); *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (per curiam) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss." (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009))).

Because "damages are an essential element" of a RESPA claim that is missing from Hudson's amended complaint, I need not consider whether

Hudson's letters to Essex constituted Qualified Written Requests or if Essex's responses complied with its obligations under RESPA. *See Renfroe*, 822 F.3d at 1246. Count II fails to state a claim and is dismissed without prejudice.

### 3. Hudson's Complaint is a Shotgun Pleading

Hudson's complaint is also an impermissible shotgun pleading. In particular, Count III suffers from the "unifying characteristic of all types of shotgun pleadings," which is that "they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). I dismiss Count III without prejudice.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland*, 792 F.3d at 1320. A shotgun pleading exacts "an intolerable toll on the trial court's docket." *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997); *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d

1291, 1295 (11th Cir. 2018) (explaining that a district court's inherent authority includes dismissing a complaint as a shotgun pleading but that a district court must "sua sponte allow a litigant one chance to remedy such deficiencies"); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* . . . litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

"The most common [shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321. Complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" are "the next most common" form of shotgun pleading. *Id.* at 1321–22.

Count III suffers from both afflictions. In Count III, Hudson alleges a claim for "Lack of Standing Under UCC §§ 3-301, 3-305, 3-309." In doing so, he "realleges all preceding paragraphs"—as he does in each Count in the complaint.[5] Am. Compl. ¶¶ 17, 22, 25, 30, 35. Further, "lack of standing" under the Uniform Commercial Code is not a cause of action, as Essex correctly

---

[5] In Hudson's response to the order (Doc. 5) asking him to explain why the amended complaint should not be dismissed as a shotgun pleading, Hudson claims that the counts do not reallege the allegations of the preceding counts. Resp. to Shotgun Pleading (Doc. 11) at 2. They plainly do.

identifies in its motion to dismiss. MTD at 10. Hudson muddies the waters as to the nature of the claim by alleging, without further elucidation, that he seeks "declaratory judgment barring [Essex] from enforcing the alleged debt." *Id.* ¶ 28. He then rounds out Count III with references to multiple Florida statutes without connecting them to any particular cause of action. *Id.* ¶ 29.

In response to Essex's argument in the motion to dismiss that Count III does not allege a valid cause of action, Hudson announces that Count III is a claim for declaratory relief "to determine whether [Essex] qualifies as a 'person entitled to enforce' the promissory note under Florida's Uniform Commercial Code." Resp. to MTD at 5. Hudson's amended complaint does not provide any notice, much less adequate notice, of such a claim or the grounds on which it rests. Count III is dismissed without prejudice as an impermissible shotgun pleading.

## IV.    CONCLUSION

Essex has carried its burden to establish removal jurisdiction. Hudson's claims in Counts I, IV, and V all hinge on whether he has a right to rescind the mortgage under TILA. He does not. Hudson fails to sufficiently allege his RESPA claim in Count II and alleges an impermissible shotgun pleading in Count III. Accordingly, the following is **ORDERED:**

1.    Hudson's motion to remand (Doc. 4) is **DENIED**.

2.    Essex's motion to dismiss (Doc. 8) is **GRANTED**.

3.    Counts I, IV, and V are **DISMISSED with prejudice**.

4.    Counts II and III are **DISMISSED without prejudice**.

5.    Hudson may file an amended complaint that addresses this order's concerns no later than **October 21, 2025**. Should he choose to do so, he must title it "Second Amended Complaint." Further, most of the exhibits to the original complaint are partially or entirely illegible and should be rescanned and refiled in a legible state. *See, e.g.*, (Doc. 1-3) at 15, 23–39, 42–58. Hudson should ensure any new exhibits that he may file with an amended complaint are legible.

**ORDERED** in Tampa, Florida, on October 7, 2025.

Kathryn Kimball Mizelle
United States District Judge

23